IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**June 30, 2026**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

JOHN GREYNOLDS,
**Claimant Below, Petitioner**

**v.) No. 26-ICA-8**          (JCN: 2026003109)

**BLUEWATER, INC. & CJA LEASING, LLC,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**


Petitioner John Greynolds appeals the December 8, 2025, order of the Workers' Compensation Board of Review ("Board").[1] Respondent Bluewater, Inc., & CJA Leasing, LLC, ("Bluewater") timely filed a response. Mr. Greynolds filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied the addition of severe cervical foraminal stenosis to the claim as a compensable condition.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On July 10, 2025, Mr. Greynolds was transported via ambulance to J.W. Ruby Memorial Hospital immediately following a motor vehicle accident. Mr. Greynolds reported significant neck pain and left upper extremity tingling, but he denied any loss of consciousness. A CT of the cervical spine showed no acute fracture, no prevertebral soft tissue thickening, and the cervical vertebral body height and alignment were overall maintained. There were multilevel degenerative changes, including intervertebral disc space height loss, osteophytosis, and facet arthrosis, overall most conspicuous from C5 to C7. The radiologist noted that disc osteophyte complexes at those levels likely result in moderate spinal canal stenosis. There was no acute abnormality within the visualized lung apices or neck soft tissues. A CT of the brain showed no acute intracranial abnormality or

---

[1] Mr. Greynolds is represented by Christopher J. Wallace, Esq. Bluewater is represented by Jeffrey B. Brannon, Esq.

skull fracture. Mr. Greynolds was discharged with the clinical impression of trauma, abdominal aortic aneurysm, and acute kidney injury.

Virginia Mozingo, PT, MPT, at Summit Physical Therapy evaluated Mr. Greynolds on August 20, 2025. The initial diagnoses were a headache, dizziness and giddiness, and cervicalgia. Mr. Greynolds reported severe and constant pain in his neck and upper back. Mr. Greynolds stated that he was knocked unconscious and had ongoing dizziness, ringing in his ears, and difficulty turning his head side to side. Ms. Mozingo determined that Mr. Greynolds had limitations of cervical and shoulder range of motion, strength, and flexibility, which impacts his ability to perform functional activities such as work duties, driving, and dressing.

Mr. Greynolds submitted a Report of Injury dated August 11, 2025, noting that he injured his head/neck, and that he was suffering from dizziness, ringing in his ears and nightmares. John Murchison, D.O., signed the physician's portion indicating that Mr. Greynolds was first seen on July 11, 2025, and complained of musculoskeletal pain/vertigo after a motor vehicle accident. An undated Employers' Report of Occupational Injury or Disease indicated that Mr. Greynolds was a truck driver, and he sustained trauma, acute kidney injury and injuries to his upper torso, head and neck on July 10, 2025, when he was rear-ended by another tractor trailer driving full speed after losing its brakes coming down a hill.

On August 20, 2025, the claim administrator issued an order holding the claim compensable for cervical contusion. In an amended order dated September 25, 2025, the claim administrator held the claim compensable for the diagnoses of cervical strain and post-concussion syndrome with post-concussion headaches.

Mr. Greynolds underwent an MRI of his cervical spine on September 10, 2025, revealing facet arthropathy at C2-C3 with endplate disc osteophyte complex and no significant stenosis. At C3-C4, there was a mild disc bulge with no central canal or neural foraminal stenosis. At the C4-C5 end plate, a disc osteophyte complex was present with mild right neural foraminal narrowing. At the C5-C6 endplate, a disc osteophyte complex was present with moderate right neural foraminal stenosis and mild central canal stenosis. At the C6-C7 endplate, a disc osteophyte complex was present, eccentric to the right, and there was severe and moderate left neural foraminal stenosis and moderate central canal stenosis. Imaging at C7-T1 was unremarkable.

On September 11, 2025, Erin Myers, NP, submitted a request for a referral to neurosurgery for the diagnosis of cervical stenosis of the spinal canal. On September 12, 2025, Mr. Greynolds underwent an independent medical evaluation by J. David Lynch, M.D. Mr. Greynolds reported neck pain, and he denied prior concussions or neck problems. Dr. Lynch noted underlying degenerative changes with no signs of radiculopathy. Dr.

Lynch stated that the degenerative changes seen on Mr. Greynolds' cervical spine MRI would cause him to have non-radiating neck pain. Dr. Lynch opined that the degenerative changes were preexisting but would have been aggravated by the motor vehicle accident. According to Dr. Lynch, Mr. Greynolds' symptoms fit an aggravation of underlying degenerative changes. Mr. Greynolds stated that he had lost consciousness at the time of the accident and that he feels the Emergency Room records were inaccurate. Dr. Lynch stated that he believed the injuries related after the motor vehicle accident would be cervical strain and concussion syndrome with post-concussion headaches. Dr. Lynch stated that physical therapy for Mr. Greynolds's neck and vestibular treatment for his post-concussion syndrome are appropriate, and he would agree with a neurosurgical consultation for his neck, but the doctor noted that he was unlikely to require any cervical spine surgery. Dr. Lynch found that Mr. Greynolds was not at maximum medical improvement and noted that he would not be able to return to work at this time with his post-concussion syndrome.

On September 24, 2025, Mr. Greynolds was seen by NP Myers, and he reported continued neck pain and discomfort, persistent dizziness that caused an unsteady gait and balance problems. Mr. Greynolds further complained of a continuous headache that was unrelieved by ibuprofen, limited range of motion in his neck that was tender with movement, dizziness, and intermittent blurry vision. NP Myers assessed headache, dizziness, unsteady gait, tinnitus, blurred vision, and neck pain. The claim administrator issued an order dated September 24, 2025, authorizing a neurosurgical consultation for the neck.

Cherian John, M.D., submitted a Diagnosis Update dated September 24, 2025, noting that the primary diagnosis is a cervical contusion and the secondary diagnoses are severe cervical foraminal stenosis and concussion. Dr. John stated that Mr. Greynolds continues to experience neck stiffness and pain, balance problems, and unsteady gait. Dr. John further stated that Mr. Greynolds is unable to drive a vehicle or work secondary to his symptoms. On October 1, 2025, the claim administrator issued an order denying the addition of severe cervical foraminal stenosis to the claim as a compensable condition. Mr. Greynolds protested this order.

On December 8, 2025, the Board affirmed the claim administrator's order, which denied the addition of severe cervical foraminal stenosis to the claim as a compensable condition. The Board found that Mr. Greynolds failed to establish that severe cervical foraminal stenosis is causally related to the compensable injury. Specifically, the Board found that Mr. Greynolds did not establish that severe cervical foraminal stenosis was caused by the compensable injury because he offered no evidence showing that his cervical spine was asymptomatic prior to the motor vehicle collision. Mr. Greynolds now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Mr. Greynolds argues that the Board erred in failing to recognize the numerous statements in the record where he states that his neck was asymptomatic.

In *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), the Supreme Court of Appeals of West Virginia ("SCAWV") held that:

[a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3.

The SCAWV clarified its position in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), holding:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously

4

manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id.* at 294, 879 S.E.2d at 781, syl. pt. 5.

This Court held in *Blackhawk Mining, LLC, v. Argabright*, 251 W. Va. 549, 552, 915 S.E.2d 7, 10 (W. Va. Ct. App. 2023) aff'd by the SCAWV in *Argabright v. Blackhawk Mining, LLC*, No. 23-381, 2024 WL 3984505 (W. Va. Aug. 27, 2024) (memorandum decision), that, "[w]hen read in unison, *Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury."

Here, the Board found that Mr. Greynolds failed to establish that severe cervical foraminal stenosis is causally related to the compensable injury. The Board noted that Dr. Lynch opined that the degenerative changes in Mr. Greynolds' spine preexisted the accident, but would have been aggravated by the accident. Further, the Board noted that Dr. Lynch's statement is the only evidence of record that addresses this issue. The Board found that Mr. Greynolds failed to offer evidence establishing that the aggravation of the preexisting degenerative changes constitutes a new injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Greynolds failed to establish that severe cervical foraminal stenosis is causally related to the compensable injury. We note that Mr. Greynolds' arguments are based on the Board's statement indicating that he failed to establish that his preexisting condition was asymptomatic. We conclude that the Board was incorrect in implying that this is the only factor considered in determining whether a claimant with a preexisting degenerative condition has suffered a discrete new injury. Further, we disagree with the notion that a preexisting degenerative condition can be held compensable.

In *Gill*, the SCAWV discussed several cases in which claimants had preexisting conditions and aggravation of those conditions caused a separate discrete new injury. In those cases, the claimant's underlying preexisting condition was not held compensable, only the discrete new injury was deemed compensable. The SCAWV held that these cases "do not stand for the proposition that merely because a noncompensable preexisting injury was aggravated, it is fully compensable. It is only a new injury resulting from the aggravation of the preexisting injury that becomes compensable." *Gill* at 746, 783 S.E.2d at 866.

5

While the Board's order unnecessarily focuses on Mr. Greynolds' prior symptoms, the result of the Board's order was not clearly wrong. Notably, the Board also found that Dr. Lynch determined the pathology seen on Mr. Greynolds' cervical MRI pre-existed the compensable injury. The Diagnosis Update form submitted by Mr. Greynolds requests that severe cervical stenosis be added as a compensable condition. However, *Gill* and *Argabright* hold that pre-existing conditions are not compensable. Therefore, the Board did not commit error when it affirmed the claim administrator's order.

Accordingly, we affirm the Board's December 8, 2025, order.

Affirmed.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White